UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | | |
|---|---|---|---|
| DAVID SIMPSON, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos: | 1:06-cr-021 |
| | ) | | 1:09-cv-031 |
| | ) | | (MATTICE/CARTER) |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

**MEMORANDUM**

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner David Simpson ("petitioner"). The government has filed its response to the motion. For the following reasons, the § 2255 motion to vacate will be **DENIED** and this action will be **DISMISSED**.

I.  Standard of Review

This court must vacate and set aside petitioner's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process."

*United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.     Factual Background

Petitioner entered a conditional guilty plea to possession with intent to distribute 500 grams or more of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)( & (b)(1)(B). He reserved the right to appeal the denial of his motion to suppress evidence. [Criminal Action No. 1:06-cr-21, Court File No. 64, Plea Agreement]. Petitioner was sentenced to a term of imprisonment of 120 months. [*Id.*, Court File No. 74, Judgment]. The Sixth Circuit affirmed the denial of the motion to suppress. *United States v. Simpson*, 520 F.3d 531 (6th Cir. 2008).

In support of his § 2255 motion, petitioner alleges six instances of ineffective assistance of counsel, five of which relate to counsel's handling of the hearing on the motion to suppress. The Sixth Circuit summarized the evidence presented at the hearing as follows:

> On February 21, 2006, at around 8 p.m., Officer Andy Ratcliff of the Cleveland, Tennessee Police Department was parked near the 23–mile marker

2

Case 1:06-cr-00021-HSM-WBC   Document 92   Filed 02/07/12   Page 2 of 11   PageID #: 108

on Interstate 75, observing northbound traffic. A black Nissan Maxima "caught [his] eye" because of the vehicle's "extremely dark" window tinting, and a "weathered" temporary license plate that was not "clearly legible." Tennessee law exempts out-of-state vehicles from window tinting regulations, *see* Tenn.Code Ann. ("T.C.A.") § 55–9–107, but Officer Ratcliff nevertheless pulled out to follow the car in order to confirm whether the "tag was illegible." The officer required about two miles to catch up to the Maxima, after which he followed it for approximately two more miles. He estimated that he followed, at times, within a single car length of the Maxima. The officer could see that the tag was from Ohio and could read the tag number (which was printed in large, bold numbers), but could not read the expiration date (which was handwritten with a relatively thin black marker on a piece of silver metallic tape immediately underneath the tag number). Additionally, the officer testified that he could see that the tag was "torn and very weathered," that a portion of the tag was "flapping," that the top of the tag was bolted on but the bottom was secured only with duct tape, and that the whole tag was "coming apart basically." Because the expiration date was not "clearly legible," the officer believed that the tag was not in compliance with T.C.A. § 55–4–110(b) (governing the display of license plates) and so executed a traffic stop by activating his emergency lights.

Once the vehicle stopped, Officer Ratcliff got out of his patrol car and shined his flashlight directly on the tag. He testified, "[The tag] was torn. It was really weathered, discolored. The actual expiration date [was] written on what appear[ed] to be some sort of tape ... [that] the state of Ohio would put on the plate, and it was wrinkled and bubbled up." It spite of its deteriorated condition, the officer could then see that the tag had not expired, but was in fact valid for one more day. The officer approached the passenger side of the vehicle; when the female passenger lowered the window, he could immediately detect the stench of burnt and raw marijuana. After asking Simpson for his license, Simpson—without prompting from the officer—asked whether his tag had fallen off. Officer Ratcliff replied, "[N]o, but it looks like it could at any moment." Simpson told the officer that he had recently stopped at a gas station and put duct tape on the tag to secure it to the vehicle, presumably recognizing its precarious condition. Officer Ratcliff asked for permission to search Simpson's vehicle, which was refused. The officer (who was a trained K–9 handler) used his dog to sniff the car, and the dog alerted. The vehicle was then searched and three kilograms of cocaine were found hidden in the trunk.

3

*Id.* at 533 (footnote omitted).

This court concluded that Officer Ratcliff had probable cause to stop petitioner's automobile based upon the illegibility of the expiration date on the temporary tag and the possible violation of Tenn. Code Ann. § 55-4-110(b). [Criminal Action No. 1:06-cr-21, Court File No. 55, Memorandum, p. 8].

On appeal, the Sixth Circuit considered whether the applicable standard for evaluating Officer Ratcliff's initial traffic stop was probable cause or reasonable suspicion. 520 F.3d at 538. The court concluded that, because the "failure to keep a license plate 'clearly legible' is an ongoing violation of § 55-4-110(b), the standard of reasonable suspicion applies." *Id.* at 541. "Because this violation of T.C.A. § 55–4–110(b) was an ongoing criminal offense, we hold that the requisite justification for an investigatory stop under the Fourth Amendment was reasonable suspicion." *Id.*

The court then concluded that the traffic stop was reasonable and the search was proper:

> [W]e examine whether Officer Ratcliff had reasonable suspicion that § 55–4–110(b) was being violated. In this case, the officer testified that he could not discern the expiration date of the tag even when traveling a single car length behind Simpson's vehicle with his headlights shining directly on it. He could only make out the expiration date once he had stopped the car, gotten out, and shined his flashlight directly on the plate from a distance of only a few feet. Although we are aware of no Tennessee case law that indicates a precise distance from which a temporary tag's expiration date must be visible, it seems reasonable to assume that more than a few feet is required. Regardless, the proper question is not whether Simpson was, in fact, violating § 55–4–110(b) by having an illegible expiration date on his temporary tag. The question is whether Officer Ratcliff had an objectively reasonable suspicion that a

4

violation of that statute was occurring. Thus, even if the minimal legibility of the expiration date from a few feet away were enough to pass muster with section 110, the inability of the officer to perceive the expiration date while driving at very close proximity gave him at least reasonable suspicion to believe that the statute was being violated. Additionally, the deteriorated condition of the temporary tag added to the officer's suspicion that it violated Tennessee law. A tag that is "very weathered," "fadded" [sic] "torn," "flapping," and "coming apart," is surely less legible than one that is in good condition. Under these circumstances, a temporary investigative stop was reasonable under the Fourth Amendment. Once Officer Ratcliff approached the vehicle to explain the reason for the stop—something that is surely permissible even if the officer, after executing the stop, had concluded that there was no violation of law—he immediately developed further reasonable suspicion (the odor of marijuana) to detain the vehicle. The canine alert provided probable cause, and the suppression motion was properly denied.

*Id*. at 542-43 (footnote and internal citation omitted).

III.     Discussion

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective

5

standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The issue is whether counsel's performance "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*). Because he is seeking relief under § 2255, petitioner bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Petitioner alleges the following five instances of ineffective assistance of counsel with respect to his attorney's conduct during the suppression hearing: (1) counsel failed to introduce as evidence the vehicle tag, which would have impeached Officer Ratcliff's false testimony that the tag was faded, torn, and coming apart; (2) counsel failed to call as a witness Officer Ratcliff's partner in order to impeach Officer Ratcliff; (3) counsel failed to argue to the court the "rule of lenity" with respect to the choice of law being applied to petitioner's Ohio tag; (4) counsel failed to have petitioner's car checked for marijuana residue in order to impeach Officer Ratcliff's testimony that he smelled the drug; and (5) counsel

6

failed to argue that Officer Ratcliff lost the marijuana and thus there was no evidence to support the officer's claim that he smelled marijuana.

Contrary to petitioner's allegations, the record reflects that counsel was vigorous in his attempt to suppress the evidence against petitioner and diligent in his preparation for the suppression hearing. [Criminal Action No. 1:06-cr-21, Court File No. 52, Transcript of Suppression Hearing, pp. 1-205]. Central to the issue was Officer Ratcliff's credibility as to whether the temporary tag was clearly legible. Prior to the hearing, counsel reviewed the videotaped recording of the traffic stop, Officer Ratcliff's photographs of the tag, the audiotaped recording of Officer Ratcliff's partner reporting the stop to dispatch, Officer Ratcliff's affidavit in support of petitioner's arrest, and Officer Ratcliff's testimony before a federal grand jury and at the preliminary examination and detention hearing. [*Id*. at 18, 44-45, 59-62, 64-67, 142-144]. Counsel also hired a video production specialist to perform an enhanced video of the videotaped traffic stop. [*Id*. at 132-133].

During Officer Ratcliff's direct examination at the suppression hearing, counsel asked the court to review the original photographs of the temporary tag, emphasizing that neither the photographs or videotape accurately reflected what Officer Ratcliff observed. During cross-examination, counsel questioned Officer Ratcliff with respect to his affidavit, his testimony at the detention hearing and before the grand jury, and his partner's call to dispatch. [*Id*. at 70-98]. Counsel called as defense witness Wes Snyder, the Chief of Police of

7

Cleveland, Tennessee, and questioned him regarding city policy as it pertains to traffic law enforcement. [*Id*. at 102-118].

Counsel also called as a defense witness Mark Lawrence, a private investigator hired by previous counsel, who went to the impound lot at the Cleveland Police Department on March 10, 2006, and looked at the vehicle petitioner was driving at the time of his arrest. [*Id*. at 120-121]. Mr. Lawrence testified that he took photographs of the tag and that the photographs accurately depicted the condition of the tag on March 10, 2006; the photographs were made exhibits to Mr. Lawrence's testimony. [*Id*. at 121-123). Mr. Lawrence also testified that the tag was secure and was not flapping, even though it was windy that day. [*Id*. at 123-124]. On cross-examination, Mr. Lawrence admitted that he examined the tag and it was torn. [*Id*. at 128].

Counsel further called as a defense witness Barron Cammon, the video production specialist who did an enhanced video of the videotaped traffic stop. [*Id*. at 132-133]. Mr. Cammon testified that, in order to enhance a poor videotape, he would adjust contrast and brightness, and zoom in on the picture; he admitted that an enhancement would not allow him to assess what a live human being would see. [*Id*. at 136]. The purpose of his testimony, however, was that the enhanced video indicated that there was no movement of the tag for Officer Ratcliff to have seen. [*Id*. at 137, 149-155].

Finally, petitioner testified at the suppression hearing in his own behalf. [*Id*. at 164]. Petitioner testified that he secured the temporary tag with tape prior to leaving Georgia on

8

Case 1:06-cr-00021-HSM-WBC   Document 92   Filed 02/07/12   Page 8 of 11   PageID #: 114

his way to Cincinnati, and that he was still secure when he stopped for gas prior to his being stopped by Officer Ratcliff. [*Id*. at 166-167]. On cross-examination, petitioner admitted that there was a tear in the tag. [*Id*. at 174].

Petitioner claims his attorney should have introduced the actual tag. Although that could have proven whether or not the tag was faded, it would not have necessarily proven what Officer Ratcliff observed. Petitioner also claims his attorney should have called Officer Ratcliff's partner as a witness, but there is nothing in the record to suggest his testimony would have impeached that of Officer Ratcliff. Petitioner further claims that counsel should have tested the car for marijuana residue and should have argued that Officer Ratcliff lost the marijuana. The issue, however, was the legality of the initial stop and that turned on what Officer Ratcliff saw.

As the Sixth Circuit has observed, "our role on habeas review is not to nitpick gratuitously counsel's performance. After all, the constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." *Smith v. Mitchell*, 348 F.3d 177, 206 (6th Cir. 2003). Under the circumstances, petitioner received "constitutionally adequate representation." *Pillette v. Berghuis*, 408 F. App'x 873, 891 (6th Cir. 2010).

With respect to petitioner's claim that counsel should have argued the "rule of lenity," "[t]he rule of lenity applies when a statutory term is ambiguous and cannot be clarified by the statue's history or structure." *United States v. Jackson*, 401 F.3d 747, 750 (6th Cir. 2005). There was nothing ambiguous, however, about Tenn. Code Ann. § 55-4-110(b), which

9

requires a registration plate to be "clearly legible." To the extent petitioner claims that counsel should have argued that Ohio law governed the condition of his temporary tag, counsel did in fact make that argument, which was rejected by the Sixth Circuit. *United States v. Simpson*, 520 F.3d at 535-38 (discussion of choice of law and reciprocity).

In his sixth instance of alleged ineffective assistance of counsel, petitioner claims that his retained counsel failed to file a petition for writ of certiorari to the Supreme Court and failed to advise petitioner that he could file such a petition *pro se*. In response to this claim, the government has filed the affidavit of Jerry H. Summers, the attorney who represented petitioner at trial and on appeal. [Criminal Action No. 1:06-cr-21, Court File No. 87, Response to Motion to Vacate Sentence, Exhibit 1, Affidavit of Jerry H. Summers]. Mr. Summers testifies that after petitioner's conviction was affirmed by the Sixth Circuit, he mailed to both petitioner and his parents a letter informing them of the possibility of an appeal to the U.S. Supreme Court, which would require the payment of additional attorney fees and other costs, and that neither petitioner nor his parents responded with a request that Mr. Summers file a petition for writ of certiorari; a copy of the letter is attached to Mr. Summers' affidavit. [*Id.*].

"[D]efendants are not constitutionally entitled to the assistance of counsel in preparing petitions for certiorari." *Nichols v. United States*, 563 F.3d 240, 242 (6th Cir. 2009) (citing *Ross v. Moffitt*, 417 U.S. 600, 617 (1974)). "And, 'where there is no constitutional right to counsel there can be no deprivation of effective assistance,' so the failure to file for such

10

review cannot amount to constitutionally ineffective assistance." *Id*. at 248 (quoting *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)). Accordingly, Mr. Summers' alleged failure to file a petition to the Supreme Court did not constitute ineffective assistance of counsel. In addition, counsel was not ineffective in assuming that petitioner did not want to pursue a petition for certiorari, based upon petitioner's lack of response to counsel's letter, or otherwise failing to advise petitioner that he could proceed *pro se* in the matter.

Based upon the foregoing, petitioner has failed to demonstrate that he received ineffective assistance of counsel under the standard set forth in *Strickland*.

IV. Conclusion

Petitioner is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. The court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this court will **DENY** petitioner leave to proceed in forma pauperis on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/Harry S. Mattice, Jr.
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE